**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CITY OF WOODINVILLE, a municipal corporation, | ) ) ) | No. 82660-3-I |
| Respondent, | ) ) ) | DIVISION ONE |
| v. | ) ) | PUBLISHED OPINION |
| EASTSIDE COMMUNITY RAIL, LLC, a Washington corporation, and DOUGLAS ENGLE, and individual; | ) ) ) ) ) | |
| Appellants, | ) ) | |
| GNP RLY INC., a Washington corporation; | ) ) | |
| Respondent, | ) ) | |
| TELEGRAPH HILL INVESTMENTS, LLC, a Wyoming corporation; BALLARD TERMINAL RAIL COMPANY, a Washington corporation; NW SIGNAL MAINTENANCE, LLC, a Washington corporation; KEVIN KUCERA, an individual; JOANNE SKIEVASKI, an individual; EARL ENGLE, an individual; and ALL OTHER PERSONS OR PARTIES UNKNOWN CLAIMING ANY RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN THE REAL PROPERTY DESCRIBED IN THIS COMPLAINT, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

HAZELRIGG, J. — Eastside Community Rail (ECR) and Douglas Engle appeal from an order granting summary judgment in a quiet title action. ECR and

No. 82660-3-I/2

Engle argue the superior court lacked subject matter jurisdiction, and therefore all orders it entered are void, because federal law preempts state exercise of jurisdiction over claims of ownership of railroad easements. Alternatively, ECR and Engle argue there is no justiciable controversy. Because the superior court properly exercised authority over the justiciable claim, we affirm.

FACTS

This appeal arises from a lawsuit the City of Woodinville (City) filed in King County Superior Court to quiet title of a railroad easement. The easement was created in 2009 by BNSF Railway Company, who then conveyed it to GNP Railway, Inc. (GNP). In January 2011, Douglas Engle, who was chief financial officer of GNP at the time, executed a quit claim deed on behalf of GNP conveying the easement to his then-wife and his father. Engle was terminated from his position at GNP that same month. Days later, GNP creditors commenced involuntary bankruptcy proceedings. During the bankruptcy proceedings, the bankruptcy trustee and Engle, now acting on behalf of Eastside Community Rail, LLC (ECR),[1] executed a Record of Transfer, documenting that ECR had purchased the easement from GNP in the bankruptcy, despite the fact that Engle had quitclaimed the easement to his relatives 11 months earlier.

In July 2018, Snohomish County[2] filed several petitions with the Surface Transportation Board (STB) to revoke ECR's ability to operate a railroad on the easement. Eastside Cmty. Rail, LLC—Acquisition & Operation Exemption—GNP

---

[1] Because Engle acts on behalf of ECR as its sole principal, we refer to the appellants collectively as ECR for clarity.

[2] Snohomish County owns title to a portion of land underlying the easement in question.

No. 82660-3-I/3

Rly Inc. Ballard Terminal R.R. Co., LLC—Lease Exemption—Eastside Cmty. Rail, LLC, Fed. Carr. Cas. (CCH) ¶ 37406, 2018 WL 6579043 at *1 (U.S. Surface Transp. Bd. Dec. 11, 2018).  Snohomish County claimed ECR's "verified notices contained materially false or misleading information about ECR's property interests in an easement over the [railroad line] and are therefore void ab initio[3]."  Id.  The STB denied the petitions to revoke, concluding it could not determine whether the notices contained false information because it could not determine ownership of the easement as "[t]he petitions are based on property, contract, and bankruptcy law issues that should be resolved by an appropriate court."  Id.  Snohomish County appealed the decision to the United States Court of Appeals, District of Columbia Circuit.  Snohomish Cty, Wash. v. Surface Transp. Bd., 954 F.3d 290, 446 U.S. App. D.C. 56 (2020).  The D.C. Circuit reversed, holding the STB's decision was arbitrary and capricious because it "fail[ed] to consider whether the notices of exemption were misleading, even if not demonstrably false as a matter of state or federal law."  Id. at 301.

On remand, the STB found "ECR's verified notice at issue in this case was materially misleading" and vacated its exemption.  Eastside Cmty. Rail, LLC—Acquisition & Operation Exemption—GNP Rly Inc. Ballard Terminal R.R. Co., LLC—Lease Exemption—Eastside Cmty. Rail, LLC, Fed. Carr. Cas. (CCH) ¶ 37,457, 2020 WL 7640412 at *3 (U.S. Surface Transp. Bd. Dec. 21, 2020).  Neither party appealed.  The STB issued a subsequent opinion in September 2021 to "provide[] clarification" of its December 2020 decision.  Eastside Cmty. Rail, LLC—

---

[3] From the beginning.

- 3 -

No. 82660-3-I/4

Acquisition & Operation Exemption—GNP Rly Inc. Ballard Terminal R.R. Co., LLC—Lease Exemption—Eastside Cmty. Rail, LLC, 2021 WL 4467636 at *1 (U.S. Surface Transp. Bd. Sep. 27, 2021). Between the STB's December 2020 and September 2021 decisions, Snohomish County alleged ECR and Engle failed to take action to return the rail line to GNP as instructed by the STB. Id. at *2. It asked the STB to void deeds executed by Engle conveying the line to his father and then-wife, or alternatively to order ECR to reconvey the easement to GNP. Id. The STB ordered ECR "to convey the Line's easement to GNP and certify to the [STB] that they have done so." Id. at *4.

In light of the STB's 2018 conclusion that ownership of the easement was better determined by an appropriate court applying state property law, which was undisturbed by the D.C. Circuit Court decision, the City brought its 2020 quiet title action in King County Superior Court, rather than to the STB. ECR was largely unresponsive to the City's quiet title claim, which eventually resulted in an order of default. The default order against ECR was later vacated, but the court imposed a monetary sanction. The court also found ECR "failed to timely respond to interrogatories and requests for production . . . and that counsel for them has willfully refused or failed to confer in good faith."

ECR disputed the claim solely on the assertion that the trial court lacked subject matter jurisdiction (SMJ), seeking dismissal on that basis. The parties appear to agree that, due to scheduling issues, ECR's motion challenging the

court's jurisdiction was stricken by the court with instructions for ECR to renote it.[4] ECR did not renote the motion and the trial court never ruled on the challenge to jurisdiction.

The City filed a motion for summary judgment, which was joined by named defendants GNP, NW Signal Maintenance, LLC, and Kevin Kucera. The court granted the motion, finding there was "no genuine issue of material fact as to ECR's and Douglas Engle's lack of legal interest in the Easement." ECR timely appealed.

ANALYSIS

This court reviews the question of subject matter jurisdiction de novo. Angelo Prop. Co., LP v. Hafiz, 167 Wn App. 789, 808, 274 P.3d 1075 (2012). ECR's argument, essentially, is that the superior court lacks subject matter jurisdiction over the quiet title action because of federal preemption. It contends federal law allows only the STB to determine ownership of a railroad easement under 49 U.S.C. § 10501.

As the parties noted at oral argument, the concepts of subject matter jurisdiction and preemption overlap but are distinct. If a subject otherwise properly heard by a superior court falls into a set of issues over which the STB has preemptive authority, any exercise of authority by the state court is preempted by federal law. "[S]uperior courts have jurisdiction 'in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other

---

[4] The City references these facts in its briefing to this court, but the record transmitted on appeal is silent as to this aspect of the proceedings. However, the parties agreed to the facts during oral argument.

court.'" In re Marriage of Weiser, 14 Wn. App. 2d 884, 905, 475 P.3d 237 (2020) (quoting WASHINGTON CONST. art. IV, § 6). RCW 2.08.010 provides that superior courts "have original jurisdiction in all cases in equity, and in all cases at law which involve the title or possession of real property . . . and in all other cases in which the demand or the value of the property in controversy amounts to three hundred dollars." Absent any law that vests exclusive jurisdiction in some other court, the superior court has jurisdiction over a quiet title action.

I.      Superior Court Authority

"Federal law preempts state law when state law operates in a field that is completely occupied by federal law or when state law conflicts with federal law." West v. Seattle Port Comm'n, 194 Wn. App. 821, 830, 380 P.3d 82 (2016). Preemption analysis is guided by Congressional intent. Id. Preemptive intent may be explicit in statutory language or implied. Inlandboatmen's Union of the Pac. v. Dept. of Transp., 119 Wn.2d 697, 701, 836 P.2d 823 (1992). If "Congress expressly withdraws specified powers from a state through a statutory provision," there is express preemption. Beatty v. Wash. Fish & Wildlife Comm'n, 185 Wn. App. 426, 454, 341 P.3d 291 (2015). "We must interpret an express preemption clause narrowly but fairly." Kitsap County v. Kitsap Rifle and Revolver Club, 1 Wn. App. 2d 393, 404, 405 P.3d 1026 (2017). 49 U.S.C. § 10501(b) states in part:

> The jurisdiction of the Board over . . . the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

No. 82660-3-I/7

The STB has reached the question of whether this statutory language preempts state superior courts from hearing quiet title actions involving railroad easements in several cases, including a case involving ECR with nearly identical facts and concerning the very railroad tract at issue here.[5] The STB's opinion stated in part:

> ECR has argued in the state appellate court that federal preemption under 49 U.S.C. § 10501(b) bars the state courts from ruling on state property law issues concerning property subject to this agency's licensing proceedings. <u>That argument is clearly incorrect.</u>

<u>Eastside Cmty. Rail, LLC-Acquisition & Operation Exemption-GNP Rly Inc. Ballard Terminal R.R. Co., LLC-Lease Exemption-Eastside Cmty. Rail, LLC</u>, No. 10, 2022 WL 696819, at *3 (U.S. Surface Transp. Bd. Mar. 7, 2022) (emphasis added.)[6] The STB continued, stating "[a]lthough federal preemption is broad, the Board has consistently held that disputes concerning state contract and property law should be decided by the appropriate courts with expertise in those matters, rather than by the Board[,]" and cited a line of opinions where the STB had declined to reach issues which were "better determined by state court[s]." <u>Id.</u> Specific to ECR's claim before the STB, it held "in this case, a determination regarding the ownership of the Line's easement under state law . . . is appropriately being made in the Washington state courts." <u>Id.</u> The STB explains that it grants "permissive" "acquisition authority," allowing an entity "to acquire a rail line that is part of the interstate rail network." <u>Id.</u> However, "in order to exercise that authority, the party

---

[5] Snohomish County filed the original petition with the STB to revoke ECR's authority to operate a rail line. The City filed a reply brief in support of Snohomish County in that case.

[6] This decision by the STB was released in response to a motion for reconsideration filed by ECR and Engle. <u>Id.</u> at *2. It was issued after ECR submitted its briefing in this appeal.

- 7 -

also must obtain the appropriate rights under state property and contract law to actually acquire the line." Id. Further, the STB ordered the parties to "file [ ] a copy of any decisions in the state court proceedings within five days of their issuance," and noted it would revisit the matter "[a]fter the state court proceedings have been completed." Id. at *3. This ordering language is clear direction from the STB to resolve the property claims in state court, which entirely undercuts ECR's argument that the superior court could not hear this matter.

ECR argues the D.C. Circuit opinion declared the STB erred by stating ownership turned on issues of state property law to be determined by a state court. This is simply not true. The Circuit Court reversed based on the STB's failure to address "the separate claim that the notices of exemption were misleading," particularly because "[t]he record before the [STB] contained ample evidence of potential misleadingness, notably the omissions and inconsistencies in Engle's account that [Snohomish County] and others flagged." 954 F.3d at 302. The court stated it "need not decide whether the [STB] permissibly declined to address [Snohomish County]'s arguments about the falsity of Engle's filings," because those claims rested in questions of state property law. Id. The reversal was based entirely on the Circuit Court's conclusion that the STB failed to exercise its discretion and rule on the exemption. It had nothing to do with the STB's conclusion regarding the state court's ability to resolve property or contract claims.

ECR makes much of the concurrence to the D.C. Circuit Court opinion, which "identif[ied] another troubling aspect of the [STB]'s decision: Its insistence that only state courts, or perhaps a bankruptcy court, can decide whether filings

submitted to the [STB] were 'false' within the meaning of the [STB]'s own regulation." Id. at 303. (Millett, J., concurring). Even if we were to consider this concurring opinion, the authoring judge is troubled by the [STB]'s purported statements that a state court can determine if a filing is false, not the conclusion that a state court should determine ownership under state property law. The STB opinion clearly holds ownership should be determined by a state court applying state property law, which would necessarily determine if the filing is false by resolving the underlying factual discrepancy. Likewise, the City did not ask the King County Superior Court to determine if ECR's filing was false, but only whether ECR owned the easement. While related, those questions are not the same.

STB decisions and opinions are not binding upon this court, but several federal circuit courts have held they would defer to STB decisions in analyzing preemption. In Adrian & Blissfield R. Co. v. Vill. Of Blissfield, the Sixth Circuit held "the STB was authorized by Congress to administer [49 U.S.C. § 10501] and is therefore 'uniquely qualified to determine whether state law should be preempted by [49 U.S.C. § 10501].'" 550 F.3d 533, 539 (2008) (quoting Emerson v. Kansas City S. Ry. Co., 503 F.3d 1126, 1130 (10th Cir. 2007); accord, Green Mountain R.R. Corp. v. Vermont, 404 F.3d 638, 642 (2d Cir. 2005). Additionally, our state courts have consistently "'accorded great weight'" to an agency's interpretation of an ambiguous statute "'[w]here a statute is within [an] agency's special expertise.'" See, e.g., Port of Seattle v. Pollution Control Hr'gs Bd., 151 Wn.2d 568, 593, 90 P.3d 659 (2004) (alterations in original) (quoting Postema v. Pollution Control Hr'gs Bd., 142 Wn.2d 68, 77, 11 P.3d 726 (2000)). We would be remiss to ignore the

No. 82660-3-I/10

STB's explicit and consistent holdings that state courts may properly hear issues of state property law over railroads.

The superior court had subject matter jurisdiction to hear the quiet title claim, and its exercise of authority to hear the present claim was not preempted by federal law.[7]

II.       Justiciability

ECR next argues even if the superior court had subject matter jurisdiction and authority to hear the case, there is no justiciable case or controversy because the City has no claim of ownership to the easement.  The City counters that it has standing to bring a quiet title action under RCW 7.28.010 because it owns the land burdened by the easement and under RCW 35A.11.020 because it has statutory authority to regulate use of real property.

RCW 7.28.010 states in part that "[a]ny person having a valid subsisting interest in real property, and a right to the possession thereof, may recover the same by action in the superior court of the proper county . . . to quiet or remove a cloud from the title to real property."  To bring a claim, a plaintiff must first demonstrate they are in possession or have a "right to possession of real property." Kobza v. Tripp, 105 Wn. App. 90, 95, 18 P.3d 621 (2001).  This right to possession

---

[7] ECR also assigns error to the court's failure to rule on the question of subject matter jurisdiction. While CR 12 requires courts to determine the question of subject matter jurisdiction whenever it is raised by a party, the record before us is less than clear as to the whether ECR effectively abandoned its motion when it failed to renote it after being instructed to do so by the trial court.

Further, as the City noted at oral argument, ECR could have raised its subject matter jurisdiction challenge in response to the City's motion for summary judgment, but did not. Even assuming the trial court erred by failing to rule on the issue, any error is harmless as this court has reached the question and concluded that the superior court had subject matter jurisdiction to hear the case.

No. 82660-3-I/11

allows, for example, "the dominant owner to an easement" to bring a quiet title claim. Kave v. McIntosh Ridge Primary Rd. Ass'n, 198 Wn. App. 812, 819–20, 394 P.3d 446 (2017). A property owner may bring a quiet title action to obtain "an order removing" an encumbrance, or cloud, from the property title. Robinson v. Khan, 89 Wn. App. 418, 421, 948 P.2d 1347 (1998); see also RCW 7.28.010 (Plaintiff may bring an action to "remove a cloud from the title to real property"). "An encumbrance is 'any right to, or interest in, land which may subsist in third persons, to the diminution of the value of the estate of the tenant.'" Robinson, 89 Wn. App. at 421 (quoting Merlin v. Rodine, 32 Wn.2d 757, 760, 203 P.2d 683 (1949)). Easements, liens, and servitudes, are encumbrances. Merlin, 32 Wn.2d at 760. This court has held "[t]he word 'cloud' does not denote a hard-edged limitation[,] [i]t is more appropriate to focus on whether the recorded document has any tendency to impair the fee owner's ability to exercise the rights of ownership." Robinson, 89 Wn. App. at 422–23.

Here, the City owns the property burdened by the easement in fee title. This easement creates an encumbrance clouding title of the City's land. Because the property is burdened by an easement, a third person may have a competing interest in the land by allowing it to operate a railroad over the real property, impacting the City's ability to exercise its ownership rights. "'[T]he right to exclude others' is 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'" Holmquist v. King County, 192 Wn. App. 551, 561–62, 368 P.3d 234 (2016) (quoting Kaiser Aetna v. United States, 444 U.S. 164, 176, 100 S. Ct. 383, 62 L. Ed. 2d 332 (1979)). The question of ownership of the

- 11 -

easement impacts the City's ability to exclude individuals from its property by calling into question who may rightfully operate a railroad over the property.

Because the City holds title to the real property burdened by the easement, and the easement is an encumbrance on its title, it has standing under RCW 7.28.010 to bring a quiet title action and there is a justiciable controversy.[8]

Affirmed

WE CONCUR:

---

[8] Further, as the City noted at oral argument, even if the City was not captured within the language of RCW 7.28.010 as an interested party with regard to the easement title, superior courts have wide equitable authority to grant declaratory judgments. Under RCW 7.24.010, courts have broad "power to declare rights, status, and other legal relations," even if a declaratory judgment is not specifically requested. Any declaration issued by the court "shall have the force and effect of a final judgment or decree." RCW 7.24.010. The purpose of the Uniform Declaratory Judgments Act, chapter 7.24 RCW, "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status[,] and legal relations; and is to be liberally construed and administered." RCW 7.24.120. Accordingly, the court could have quieted title as a declaratory judgment.